Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN BEIL, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California Consumer Legal Remedies Act;<br>(2)  Violations of Unfair Competition Law;<br>(3)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act;<br>(4)  Breach of Implied Warranty pursuant to the Magnuson-Moss Warranty Act. and<br><br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.    Plaintiff Norman Beil ("Plaintiff") brings this action for himself and on behalf of all persons in the United States who purchased or leased any 2013 through 2017 Lexus ES series model vehicle (collectively, "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Toyota Motor Sales, U.S.A., Inc. ("Toyota" or "Defendant").[1]

2.    This action arises out of a uniform and widespread defect in the Heating, Ventilation, and Air Conditioning ("HVAC") system of an entire class of cars that poses an unreasonable health risk to drivers and passengers.

3.    On information and belief, the HVAC system contains one or more design defects that cause the HVAC system to emit noxious and foul odors that may result from the growth and accumulation of fungi or bacteria (the "HVAC Defect").

4.    Owners of the affected vehicles have a reasonable expectation that normal and routine use of their vehicles' HVAC system will not include exposure to noxious, foul odors, debris, or organic contaminants like mold.  Such exposure presents a well-known health hazard and can lead to illness.  For example, the Center for Disease Control and Prevention ("CDC") states that "molds can cause symptoms such as nasal stuffiness, eye irritation, wheezing, or skin irritation.  Some people, such as those with serious allergies to molds, may have more severe reactions . . . [including] fever and shortness of breath."[2]

5.    Countless studies have been published concerning the health risks

---

[1] A similar action already is on file with this Court regarding the Toyota Camry.  *Salas v, Toyota*, No. 2;15 cv 08629 FMO (ex).  As further alleged below, the Lexus is a clone or "rebadge" of the Camry sedan, and the HVAC system in the Lexus brand is identical or substantially similar to the HVAC system in the Camry.

[2] CDC, "Basic Facts: Molds in the Environment, http://www.cdc.gov/mold/faqs.htm (last visited February 17, 2015).

CLASS ACTION COMPLAINT

associated with exposure to mold, which are a matter of public record.  For example, the World Health Organization ("WHO") has published numerous guidelines protecting public heath and providing information explaining the risks associated with microbial growth on interior surfaces.[3] As one such guideline confirms, "[p]roblems of indoor air quality are recognized as important risk factors for human health…[and e]xposure to microbial contaminants is clinically associated with respiratory symptoms, allergies, asthma, and immunological reactions."[4]  More specifically, a 1999 study of automobile air conditioner systems concluded that "bacteria and fungi may form mixed, desiccation-resistant biofilms on the metal heat exchanger fins within the core of [air conditioning system] evaporators, as well as on foams, plastics, and other components. These mixed biofilms, when moistened, may be major contributors to episodic noxious odors in automobile air conditioning systems."[5]

6.      On information and belief, the HVAC system's malodorous emissions, introduced through vents into the vehicle's passenger cabin, is generated by microbial growth on a component called the evaporator or evaporator core.

7.      In a typical passenger car, like the Class Vehicles, the evaporator is located inside the passenger compartment, buried under the instrument panel. Evaporators consist of a series of internal tubes or "flow paths" to carry liquid refrigerant. There are fins attached to them through which air can pass freely.

---

[3]*See, e.g.*, Eds. Elisabeth Heseltine and Jerome Rosen, *WHO guidelines for indoor air quality: dampness and mold*, WHO Regional Office for Europe (2009), http://www.euro.who.int/__data/assets/pdf_file/0017/43325/E92645.pdf?ua=1.

[4] *Id*., "Executive Summary" at xi.

[5] Simmons, R.B., L.J. Rose, S.A. Crow and D.G. Ahearn, *The occurrence and persistence of mixed biofilms in automobile air conditioning systems*, Curr. Microbiol. 39:141-145 (1999).

CLASS ACTION COMPLAINT

8.      Figure one, below, illustrates the component parts of a vehicles' HVAC system and how they operate.



9.      As it passes into the evaporator, the cold refrigerant absorbs heat from the warmer air. Humidity in the air condenses and, instead of draining sufficiently from the HVAC system as it accumulates, collects on the evaporator's surface, trapping pollen, bits of leaves, dead bugs, and other debris that enter the HVAC system from outside the vehicle. The moist, dark environment thus encourages the growth and proliferation of fungi and bacteria.

10.     On information and belief, figure two, below, shows a Lexus evaporator with evidence of mold growth.[6]

//

//

//

---

[6] John Cleveland, *Toyota and Lexus air conditioning odor – prevention and repair of foul air*, CARspec (Feb 4, 2015), http://carspecmn.com/toyota-and-lexus-air-conditioning-odor-prevention-and-repair-of-foul-air/.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19 *Evaporator core from a Lexus*

20      11.    Plaintiff is informed and believes that the HVAC Defect cannot be

21 fully resolved by the measures Toyota recommends its consumers take and thus

22 may require recurring remediation that is temporary and can be quite expensive,

23 including installing new air filters and performing anti-bacterial foam flushes

24 intended to clean the evaporator's surface.

25      12.    Plaintiff is informed and believes, and based thereon alleges, that

26 Toyota responded to complaints of mold or noxious odors, when it did respond,

27 by replacing defective HVAC components with the same defective components,

28 thus failing to cure the HVAC Defect as warranted.

13.     Plaintiff is also informed and believes that the HVAC system in the Lexus brand is identical or substantially similar to the HVAC system in other Toyota models. Specifically, the Lexus ES series shares a basic platform with the Toyota Camry and Avalon models. For example, the original Lexus ES 250 sedan, introduced in 1990, "was a quick rebadge job of the Camry from that era"[7] and, through 2012, was "the Lexus-skinned clone of Toyota's best-selling Camry sedan."[8] Beginning in 2013, to make the model slightly larger, the Lexus ES series was built on the same platform as the 2013 Toyota Avalon, *Id.*, considered to be "basically a front drive V-6 Camry sedan with an additional four inches spliced into its wheelbase."[9]

14.     On information and belief, prior to sale of the Class Vehicles, Toyota knew or should have known about the HVAC Defect through its exclusive knowledge of non-public, internal data, including early consumer complaints about the HVAC Defect to Defendant's dealers, who are their agents for vehicle repairs, dealership repair orders, testing conducted in response to complaints and warranty claims, and Technical Service Bulletins ("TSBs") applicable to the Class Vehicles and other comparable models.

15.     As early as 1997, Defendant knew or should have known through internal sources within its exclusive custody and control that the HVAC system in the Class Vehicles contained one or more design defects that present health

---

[7] Edmunds, *Lexus ES 250 Review*, Edmunds.com, https://www.edmunds.com/lexus/es-250/ (last visited Aug. 16, 2017).

[8] Donny Nordlicht, *New York 2012: Lexus Reveals 2013 ES, New Hybrid Variant*, Automobile Magazine (April 4, 2012, 11:15am), http://www.automobilemag.com/news/new-york-2012-lexus-reveals-2013-es-new-hybrid-variant-120697/.

[9] John Pearley Huffman, *Take Me to an Elks Lodge and Don't Step on It*, The New York Times (July 23, 2010), http://www.nytimes.com/2010/07/25/automobiles/autoreviews/25toyota-avalon.html?pagewanted=2.

CLASS ACTION COMPLAINT

risks.  Despite the resources available to it, Defendant has actively concealed the HVAC Defect from and failed to disclose it to Plaintiff and Class Members at the time of their purchase or lease of the Class Vehicles and thereafter and continued to use the defective HVAC system in the Class Vehicles.

16.   On information and belief, despite notice of the HVAC defect, Toyota has not recalled the Class Vehicles to cure the defect, has not offered their customers a suitable repair or replacement free of charge, and has not offered to reimburse the Class Vehicles' owners and lessee in full for the costs they incurred in diagnosing and attempting to repair the defect.

17.   Because Toyota will not notify Class Members that the HVAC system is defective, Plaintiff and Class Members (as well as their passengers) are subjected to serious, adverse health risks.

18.   The alleged HVAC Defect was inherent and present in each Lexus HVAC system at the time of sale.

19.   Toyota knew about the HVAC Defect present in every Class Vehicle, as well as the attendant risks to health and safety, and concealed them from Plaintiff and Class Members at the time of sale, lease, and repair and thereafter.

20.   The HVAC Defect is material to Plaintiff and Class Members.  If they had known about these defects at the time of sale or lease, Plaintiff and Class Members would have paid less for the Class Vehicles or would not have purchased or leased them at all.

21.   Because of their reliance on Defendant's omissions, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles, including out-of-pocket costs pertaining to the HVAC Defect.  Furthermore, Plaintiff and Class Members were harmed and suffered actual damages because repair or replacement of the Class Vehicles' HVAC components will be substantially certain to fail, requiring recurrent

1   repairs or replacements throughout the life of each vehicle.

2   **THE PARTIES**

3   **Plaintiff Norman Beil**

4   22.   Plaintiff Norman Beil is a California citizen who resides in Los

5   Angeles, California.

6   23.   On or about July 18, 2014, Plaintiff purchased a new 2014 Lexus

7   ES350 from Lexus Santa Monica, an authorized Toyota Motor Sales dealer in

8   Los Angeles County.

9   24.   Plaintiff purchased the vehicle primarily for personal, family, or

10   household use.  Toyota manufactured, sold, distributed, advertised, marketed,

11   and warranted the vehicle.

12   25.   Passenger safety and reliability were factors in Plaintiff's decision

13   to purchase the vehicle.  Prior to making his purchase, Plaintiff reviewed specific

14   features and options for the Lexus on Toyota's official website and test drove the

15   Lexus ES350 with a Lexus Santa Monica sales representative.

16   26.   Plaintiff's vehicle came Basic Warranty coverage for 48 months or

17   50,000 miles, whichever occurs first.

18   27.   On or about August 24, 2015, Plaintiff began experiencing a strong

19   and nauseatingly foul odor coming from the HVAC system vents every time the

20   vehicle was started.

21   28.   On or about September 23, 2015, with approximately 6,600 miles

22   on the odometer, Plaintiff's wife returned the car to Lexus Santa Monica,

23   complaining of the putrid odor the vents emitted.  After inspecting Plaintiff's

24   vehicle, the service advisor replaced the air filter ("Element, Air Refiner") at a

25   cost of $79.72.  Despite the repair attempt, the HVAC system in Plaintiff's

26   Lexus continued to emit the same foul odors. On September 29, 2015, the service

27   advisor simply directed Plaintiff to the owners' manual and how to minimize

28   HVAC odors.

29.     Plaintiff continues to experience the HVAC Defect, including noxious odors emitted by his vehicle's HVAC system.

30.     At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the way it was intended to be used.

31.     Before purchasing his Class Vehicle, Plaintiff did not know about the HVAC Defect, while Defendant had exclusive knowledge of the HVAC Defect and actively concealed it.

32.     The HVAC Defect was material to Plaintiff.  Had Defendant disclosed the HVAC Defect, Plaintiff would have been aware and would not have purchased his vehicle.

**Defendant**

33.     Defendant Toyota Motor Sales, U.S.A., Inc. is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California. Toyota Motor Sales, U.S.A., Inc. designs and manufactures motor vehicles, parts, and other products for sale in California, in the United States, and throughout the world.  Toyota Motor Sales, U.S.A., Inc. is the warrantor and distributor of the Class Vehicles in California.

34.     At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in California, and throughout the United States.

## JURISDICTION

35.     This is a class action.

36.     Plaintiff and other class members are citizens of states different from the home state of Defendant Toyota Motor Engineering and Manufacturing North America, Inc.

37.     On information and belief, aggregate claims of individual Class

1    Members exceed $5,000,000.00 in value, exclusive of interest and costs.

2        38.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

3                                    **VENUE**

4        39.    Toyota, through its business of distributing, selling, and leasing the

5    Class Vehicles, has established sufficient contacts in this district such that

6    personal jurisdiction is appropriate.  Defendant is deemed to reside in this district

7    pursuant to 28 U.S.C. § 1391(a).

8        40.    In addition, a substantial part of the events, omissions, or

9    misrepresentations giving rise to these claims and a substantial part of the

10   property that is the subject of this action are in this district.  In addition,

11   Plaintiff's Declaration, as required under California Civil Code section 1780(d)

12   but not pursuant to *Erie* and federal procedural rules, which reflect that

13   Defendant are doing business in Los Angeles County, California, are filed

14   concurrently herewith as Exhibit 1.

15       41.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

16                          **FACTUAL ALLEGATIONS**

17       42.    For years, Toyota has designed, manufactured, distributed, sold, and

18   leased the Class Vehicles.  Toyota has sold, directly or indirectly, through

19   dealers and other retail outlets, tens of thousands of Class Vehicles in California

20   and throughout the United States.

21       43.    The Class Vehicles contain one or more design defects that lead to

22   the growth of fungi and bacteria in their HVAC system, from which noxious,

23   foul odors are emitted and distributed throughout the passenger cabin.

24       44.    On information and belief, the HVAC Defect is contained in or

25   around the HVAC system's evaporator, which promotes the growth of organic

26   contaminants like mold by trapping debris in condensation that collects on its

27   surface.

28       45.    Since 1997 at least, Toyota has been aware of the HVAC Defect but

1  failed, and refused, to disclose it to consumers.  Plaintiff and Class Members

2  have been damaged by this failure and refusal.

3  **The HVAC System Defect Poses an Unreasonable Safety Risk**

4  46.    Many purchasers and lessees of the Class Vehicles have experienced

5  the HVAC Defect; complaints filed by consumers and posted on the internet

6  demonstrate that the HVAC Defect is both common and widespread.  Such

7  complaints also indicate Defendant's awareness of the HVAC Defect and the

8  unreasonable health risks it presents.  The following, for example, are some

9  complaints filed by consumers with the National Highway Traffic Safety

10  Administration ("NHTSA") and posted relating to the HVAC Defect in the

11  subject HVAC system:

12  **NHTSA Complaints** (Safecar.gov, *Search for Complaints* (Aug. 16,

13  2017), http://www-odi.nhtsa.dot.gov/complaints/):

14     a.  (2011 Toyota Camry 03/17/11) TL*The contact owns a 2011

15       Toyota Camry LE. The contact stated that for the last three
       months he smelled an odor inside the vehicle when he turned

16       the air conditioner/heat off. After a while he became sick and

17       was hospitalized, but they couldn't figure out what caused him
       to become sick. The vehicle was inspected by a dealer who

18       advised him that the filter underneath the glove box may need

19       to be changed. They were able to duplicate the failure, smell
       the odor and a technician from the factory was notified. When

20       the technician inspected  the vehicle they advised him that they

21       could not locate where the odor was came from; however, he
       added a special filter to the vehicle to keep the odor out.

22       Within a few weeks he smelled the strong odor again. The

23       failure mileage was approximately 3,000. The vin was
       unavailable.

24

25     b.  (2011 Toyota Avalon 07/10/13) My car was flooded because
       of a blocked air conditioner drain which the dealer said was

26       filled with debris. The car is only one and a half years old with

27       only 16500 miles on it. It is driven on pavement and not
       parked under trees. A service representative intimated that this

28       is a common problem and that the drain could have been

CLASS ACTION COMPLAINT

designed improperly. I am concerned about mold forming because of this flooding situation.

c. (2012 Toyota Camry 05/02/14) …A/.C have bad smell when I turn off the A/C Leak lots of water,when I stop and took off the car skid and a light ABS light on the panel.I spoke to the mgr and he toll me was normal when A/C off open the outside air to the smell go away… It has 18,000 miles.

d. (2012 Toyota Camry 05/17/2014) For the past several months my 2012 Camry A/C unit releases a foul mildew order [sic]. In-cabin filter as well as ozone depletion  spray was completed twice over the span of one week at Crown Toyota, however the foul smell shortly reappears  when the car is turned on. *JS

e. (2011 Toyota Camry 08/22/14) TL* The contact owns a 2011 Toyota Camry. The contact noticed an abnormal odor in the vehicle within a month of it being purchased.  There was also white powder coming from the air vents whenever the air conditioner was activated. The contact stated that the odor was causing her and her family to become ill. The vehicle was taken to the dealer multiple times and stated that the evaporator system caused the failure. The dealer changed the evaporator system, but the odor persisted. The contact cleaned the vehicle and made sure all the windows were closed in order to eliminate the failures, but white powder continued to come through the vents. The contact was very concerned that the white powder could be toxic, especially since it was making her and her family nauseous. The contact attempted to use air fresheners in the vehicle, but the odor was still present. The manufacturer was made aware of the failure. The failure mileage was 80. Updated 10/29/14*CN

f. (2008 Lexus ES 350 03/02/17) I purchased the Lexus 3/2016 and I have been having medical problems from the mold/mildew and toxic aluminum hydroxide that was sprayed on the HVAC by Lexus to kill the mold issue. I have been going to the doctor since 7/2016 for illness that started out with tightening of the throat and tongue, frequent urination and very yellow, difficulty breathing, high blood pressure 130/80 before I purchased car my blood pressure was 120/60, blurred vision, metallic taste on my tongue and burning sensation on

CLASS ACTION COMPLAINT

my tongue that doesn't go away, dizziness. I have had the car for less than a year and I stopped using the air because it is a safety issue and my health is at stake. I have kids who ride in the car from 5years of age to 12 years and there health is affect too. The mold produces a gas of mycotoxins which can be travel to major organs lung, liver, and brain. These cars need to be recalled and Lexus of Austin in Austin, Texas refuses to do anything about my complaints. Don't let someone die before this get taken serious. There are many reports of Lexus/Toyota HVAC mold issue. Its not just the mold that is the problem it is the gas (mycotoxins) you are made to drink everytime you are behind the wheel. I didn't buy this car to have my health and my family health to be affected. Lexus of Austin took my money, and took my health too. health ;LEL.E

47.    Similar, informal complaints are also posted by consumers in internet forums demonstrate that the defect is widespread and one about which Toyota is well aware. The following are a sampling of complaints pertaining to the HVAC Defect (spelling and grammar mistakes remain as found in the original) found on such sites. on relating to the HVAC Defect and its hazards in the Class Vehicles (spelling and grammar mistakes remain as found in the original):

**LexusOwnersClub.com:[10] "Mildew Smell From Air Vents" (thread started Nov. 30, 2013)**

 a.  Posted Nov. 30, 2013 (2013 Lexus ES 350) This is my 4th Lexus. I have owned, a 2003 ES, 2006 GS, 2009 ES. I waited with enthusiasm to purchase the all new 2013 ES 350. I purchased one in August 2012, one of the earliest produced. In June of 2013, I began getting a mildew smell from my air vents when ever i turned on the A/C or just fresh air. I took it to my dealer and replaced the cabin filter with a new charcoal cabin filter. The problem did not go away. Again I took it to my dealer and was told that Lexus engineers say that you have to put the system into fresh air mode before you turn off the A/C system. I told them I have never had a car or known of any car that you have to do this. I asked where does it say to do this in the owner's manual?

---

[10] Lexus Owners Club, http://us.lexusownersclub.com/forums/topic/78939-mildew-smell-from-air-vents/ (last visited Aug. 16, 2017).

Again the smell did not go away. Was also told NOT to disinfect the system. They told me that this is considered regular maintenance. This is baloney. I wrote to the Eastern Regional Office asking them to swap my car for a new one and was turned down. My dealer tells me that their are many more cars with this problem. Lexus KNOWS that there is a problem but does not know how to correct it. How many others have the same issue with this vehicle? I am told that it is a problem on all 2013 models and Lexus will not take care and do the right thing. My dealer also told me that this problem has been corrected on the 2014 models showing me that Lexus is aware of the problem but will not do the right thing.

b. Posted April 10, 2014 (2014 Lexus ES 350) You are 100% correct. I am getting ill from the A/C in my car. It's a 2014! I am going in to change the filter but I bet the entire A/C unit is covered in mold. I am very sensitive to this and I will know for sure in a few days. I will give you an update. [Posted April 11, 2014] I took the car in yesterday and they changed the filter to a Charcoal Filter and probably sprayed something in the system. Bottom line the odor went away and more importantly I feel much better. This issue made me very ill for a two week period and I think Lexus needs to address this with other owners. Not everyone would be able to figure out what was going on and Lexus does know this is an issue. This is a very serious issue. I'm going to have to put my car on a schedule of every 6 months to get the filter changed. (I live in FL and drive lots of miles in the heat).

c. Posted April 13, 2014 (2014 ES 300h) I know it's much more humid in Fl. than Az., but I've got the same problem here in the desert. This is one of the few things that suck about a Lexus.

d. Posted May 9, 2014 (2013 Lexus ES 300h) I too have the mildew problem in our 2013 ES 300h. We received our car in January of 2013 and the problem began around June/July of 2013. We only had approx 5000 miles on the car. A car this new should not be having this type of problem! The dealer also sprayed disinfectant in to the system and said this should solve the problem. This band-aid lasted about 2 hours. Last fall, I did some research on the internet and found that several brands/models of cars have same type of problem. The engineered design of the condenser coil is flawed and does not dry out between uses. Moisture accumulates and saturates the coil when we use the AC. When we park the car the coil does not dry out and mold and mildew begin and continues to grow. The sour putrid smell permeates the systems. I found that there is a foaming cleaning product specifically for cleaning condenser coils. This is supposedly a simple process. Raise the car up, insert tube in the condenser drain tube, spray foaming cleaning product into condenser, let it do its job then let it drain out. Reports are that this does fix the problem for a time... but this treatment will need to be repeated periodically. I have not yet tried this but feel that Lexus should be responsible for this issue and be cleaning these coils on at least an annual basis. They should comp this service to us. I wonder how many Lexus owners have this same problem.

e. Posted Aug. 1, 2014 (2013 Lexus 350) I am having the same problem with our 2013 Lexus, have taken it in several times, they put in a new charcoal filter (have had the car for only 6 months), and took it in

again yesterday, they keep telling us they do not smell it, and to put it in auto mode and outside circulation before turning off the car. Very disappointed in this Lexus, I have asthma, allergies and this is not acceptable.

f.   Posted Aug. 29, 2014 (2013 Lexus ES 350) I have owned a RX300 and now own a 2013 ES350. I took delivery of the ES in November 2013 and in May 2014 I began experiencing this problem. I had no problems with my RX. I live in FL and it is HOT 9 months out of the year being in the 90s for 3 of those months. I have taken it to the dealer. Both times they changed the filter to the charcoal filter and have "flushed" the system. The bandaid fix lasted about a week. I was told that because of the heat that all cars have this problem. This is the most ridiculous thing I have ever heard. I have NEVER had this issues with any car I have driven. I was also told that I should turn off the recirculated air before I get out and let the unit run for a few minutes before turning it off. This is supposed to enable the water to drain. This whole situation is unacceptable. Consumers do not pay the premium price for a "premium" vehicle only to have to deal with a smelly AC for the first 5-10 min of their drive. I have been told that they have ordered a new "cleaning system" for this issues and that my car will be the first to have it done once it comes in. I am not willing to settle and deal with this issue. I will be taking my car back to the dealer and documenting that it will be the 3rd visit for the same issue with no resolution. Then I will research my Lemon Law rights. Not a happy Lexus owner this time!

g.   Posted Oct. 28, 2014 (2014 Lexus ES 350) I returned the car, just couldn't handle the mildew smell anymore. It was making me totally sick. I went back and forth with Lexus for the better part of a year. They lied to me so many times regarding this issue. The A/C was treated 4 times in this year and each time it only fixed it for about two weeks. They had someone from Lexus look at the car last week but I am not going to pick it up. I purchased another car over the weekend. I have been in a new car for a full week and I feel much better. I should have done it a long time ago. Lexus has a real issue with this mildew in the A/C and until they face it they will continue to lose customers. Very poor customer service on this issue.

## CarComplaints.com Toyota Camry – Consumer Reviews[11]

h.   Posted June 1, 2009 (2009 Toyota Camry LX) Brought it to Toyota service, they are telling me there is a mold and bacteria build up in the AC and it has something to do with the way the cars AC is made since 2007. They can do a "clean out" on it but the problem will return every 6 months to 1 year and it is not covered under warnty. There is nothing I can do to stop the problem but if I only run tht "Fresh Air" it will help reduce the smell....It is 98 degrees here with 100% humidity...

i.   Posted June 3, 2012 (2011 Toyota Camry LX) Every morning when I turn on AC in my 2011 Camry--it smells musty . It will take about

---

[11] CarComplaints.com, http://www.carcomplaints.com/ (last visited Aug. 16, 2017).

three minutes to go away but will come back the next morning. Dealer has sprayed a chemical in the unit but it didn't take long for the issue to come back. Dealer has worked on this issue twice but eventually smell comes back. Anyone else have this issue?

j.  Posted Nov. 1, 2012 (2012 Toyota Camry LE) ok. I am reporting for the first time however tomorrow will be my second trip to the dealer. Mold smell coming from ac, Toyota does know this is a problem. Don't let them tell you otherwise! The first time I went to dealer they ran some sort of disinfecting solution through the system. This just masks the smell for a short time, if you google "dirty sock syndrome ac" you will find several articles on the subject. It can happen in cars and home ac units. Here in florida we have a three strike lemon law, as noted this will be strike two if they fail to resolve the problem. The only way to fix it is to purge the system, replace the compressor and evaporator coil. Even this sometimes does not fix it. I plan to give the dealer three chances to resolve, I have started a case number with Toyota USA and contacted the Florida Attorney Generals office. They have told me to allow the dealer 3 attempts and if not resolved the dealer will have the option to buy back the car for the total purchase price or give me a new car. DO NOT LET TOYOTA SCREW YOU OVER! IT IS A REPORTED PROBLEM! I have been told Toyota tech. services is working on a solution but as of now no known fix. This means they will delay for as long as possible hoping you will give up. There are hundreds of reported cars with this problem, and over all it has been reported that 3% of the 2012 model have been lemons for a host of problems. That number is up from <1 % for previous years 0711. Toyota quality? What quality

k.  Posted Dec. 10, 2012 (2012 Toyota Camry) Took to the dealer three times, Dealer admitted smell problem with Toyotas for 2008, 2009, 2010, and 2011 but not 2012. They said they could not do anything about it unless I pay $5000 - $7000 to replace the duct work. The smell did not occur until several weeks after buying the vehicle and it got worse. They have a procedure to refresh the duct work and this masked the smell for a few days then the smell returned. I think it is very poor service from a company to sell a product with deficiencies and not correct the problem after making the sell.

l.  Posted Sep. 5, 2012 (2012 Toyota Camry SE) Bad smell from a/c when it is turned on every day. Took to dealer at least 3 times and the problem is still the same. Given instructions to turn a/c to fresh air mode every day before turning the engine off. Now the smell is coming directly from the fresh air outside. It seems to be a water drying or draining problem based on conversation with service manager. Will take the car again for the 4th time, to get the problem resolved. It's a shame and I am really mad. I was very happy with my prior Toyota and I am really disappointed now.

m. Posted July 12, 2013 (2012 Toyota Camry SE) My car had this horrible smell for a few weeks but I had just thought a cat had gotten under it and sprayed. Then the airbag light came on one day. I drove it straight to the dealership who looked at it. They asked if it had been wrecked and the airbags repacked. Uh, NO! 24 different codes were coming up when ran through the checks. Toyota ended up discovering

that the A/C system was not draining right and admitted it was a design flaw. The car was holding in all the moisture from the A/C and was full of mold and mildew (there's your smell!) The moisture shorted out a section of the electrical system (thus the airbag light coming on and all the other code readings.) The car was at the dealership for a month (fortunately they gave me a loaner) while it was completely disassembled to replace the coils, condenser, compressor, etc. Toyota also had Serv-Pro steam clean it from front to back because of the mold and mildew. It has been back in again for another electrical issue, but it does leave me worried about this car. I must say though, the dealership was upfront with me about the problem and took care of everything. They also said there was a car that came in the previous month for the same thing, so there is documentation of this problem. If you are having trouble with the A/C and a horrid smell, have them check this out on your vehicle. It should be under warranty!!!

n. Posted July 23, 2013 (2013 Toyota Camry XLE) smell and allergens coming from vent wit or without a/c on Toyota sprayed alcohol foam into unit...got rid of mold smell, but not toxic allergens. Cannot drive car without getting ill. Update from Mar 21, 2014 August 2, 2013 interior "sanatized" for $70. Mold smell temporarily gone, still makes our eyes water, noses to run, and gives us a sore throat to drive car with windows closed...appears to be allergen. Update from Dec 29, 2016 Now about 50,000 miles later...same problem. It always affected, and appears to have worsened, my Asthma and occasional bronchitis. We had the AC problem temporarily fixed twice, by a local A/C mechanic who washed out a bunch of black crud--it had reached the point that the A/C blew out what appeared to be a fine black dust. I scrubbed the entire inside of the passenger compartment with Lysol wipes, which picked up a lot of grey and seemed to help. We went to Arbitration against Toyota for smell and toxic allergens. They changed the complaint to "smell," and said: We don't fix smells. The arbitration board tossed the case...it is Alabama and Toyota is big business here. Toyota seems to have flagged my records -- generally managers talk to us when we bring the car in for service. Shame we owe so much, we'd trade it on something else tomorrow.

o. Posted Aug. 1, 2013 (2013 Toyota Camry LE) Moldy odor in the A/C unit. I brought it to the dealer and they have made many excuses. I call the Toyota Motors Company . they tell me they will send a technical professional master , but i have to live without my car overnight and get my car the next day or evening , Toyota Moto doesn't want to provide a Rent car . they said is my problem. My wife had asthma a long time ago, she'd been able to control it. But, since we have this car and the moldy odor from the ac vent, she started to get sick with asthma attacks. I did tell the situation to Toyota ,they filed the claim, and they canceled because the said i say different versions & they told me I lied . Toyota knows there is a problem with the car but they don't want to take responsibility, They don't care about the Health of every North American. All they want is Money. Is there anybody who can help with this? We need go to Legal advice. I bring my car too many time to the dealer & the cover the problem temporarily, change air filter etc,,,

p. Posted Oct. 24, 2013 (2013 Toyota Camry) I am very allergic to mold,

CLASS ACTION COMPLAINT

so this explains my headaches every morning on my 2 hour commute to work and the lovely 2 hours back. There is a disgusting and very foul scent that emanates from the vents when I turn on the heater or the air conditioning and it has become progressively worse over the last few months. My husband complained about it before our second service at 10K. When we took it in the service manager told us this is a common problem amongst all Toyota vehicles. He said that the drainage system doesn't seem to work very well (which you would think after the myriad of complaints they would find a way to fix this issue - it is disgusting and more disgusting when you spent over $36,000.00 of your hard earned money on a car that people don't want to get in from your law firm because of the awful stench!!).......He said that the condensation from running the heater or AC builds and doesn't drain properly and then begins to build up mold and bacteria. He said "we" meaning my husband and I could go down to Kragen and buy a pine scented spray that would help (NOT).... and I then proceeded to tell him that this wasn't my issue but TOYOTA's and for it to be fixed. They changed the filter and said they ran a FRIGI FRESH anti - bacterial liquid through and that would help. Oh and for me to make sure I press this and that on the air conditioning buttons about 10 minutes from home so that it drains as much as possible and that would help. (I don't think I should have to do ANYTHING at all after 10,000 miles) It's as if there is a dead squirrel in my engine! It's disgusting and its giving me MAJOR headaches due to my allergies.) I have filed a complaint with Toyota USA, with the Dublin Toyota where I purchased it. The smell needless to say came back the second time we drove it in the evening after our service. and is back FULLY.

48.     The HVAC Defect poses an unreasonable safety risk for Class Members.  Many consumers suffer from allergies and asthma, which mold, bacteria, and other contaminants in the Class Vehicles' HVAC system can trigger or aggravate.  As discussed above, the health risks posed by fungi and bacteria have been a matter of public record for years. For example, according to the CDC, "[i]n 2004 the Institute of Medicine (IOM) found there was sufficient evidence to link indoor exposure to mold with upper respiratory tract symptoms, cough, and wheeze in otherwise healthy people."[12]  According to the EPA, people can "avoid potential health problems by controlling moisture and eliminating mold growth."[13]  Significantly, Toyota admits in its technician's

---

[12] CDC, *How do molds affect people?*, Basic Facts (last updated: May 22, 2014), https://www.cdc.gov/mold/faqs.htm#affect.

[13] Environmental Protection Agency, *Mold* (last updated on July 26, 2017), https://www.epa.gov/mold.

training manual that no permanent repair exists and there is no practical way to completely eradicate mold – or its concomitant health risks to vehicle occupants – from its HVAC system.

### Toyota Has Exclusive Knowledge of the HVAC Defect

49. Toyota had superior and exclusive knowledge of the HVAC Defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

50. Plaintiff is informed and believes, and based thereon alleges, that since at least 1997, well before Plaintiff purchased his Class Vehicle, Toyota knew about the HVAC Defect through consumer complaints[14] and other sources not available to consumers, *infra*, as evidenced by its TSBs, owners' manual, and technician training manual.

51. On May 9, 1997, Toyota released a service bulletin addressing a musty smell produced by an identical or substantially similar HVAC system. TSB AC002-97 recommended cleaning and disinfecting the evaporator and housing to "address excessive air conditioning evaporator odor" in all Toyota models.

52. Subsequently, a technician's training manual published by Toyota in 2005 confirmed that "A/C system odors are a common complaint among users, especially after start up," explaining that the odors can be caused by "[m]icrobes growing on the evaporator surface" that are "small living bacteria . . . carried into the evaporator case [that] grow in the warm, moist environment." It informed its technicians that there is "no permanent mechanical repair" for this

---

[14] *See, e.g.*, 2009 report submitted to NHTSA, No. TOY-TQ00100040563, regarding Toyota's research on online internet forums regarding Toyota, Lexus, and Scion vehicles (Joe Colacurcio and Scott Hamm, *BrandPulse Report*, The Nielsen Company (Sept. 17, 2009)).

1  concern.

2      53.    On or around August 6, 2009, Toyota released TSB-0261-09 to its

3  dealers, addressing intermittent HVAC Odor in certain 2007-2010 Camry and

4  Camry HV vehicles and recommending the installation of "[a] newly designed

5  evaporator sub-assembly [that] has been made available to decrease the potential

6  for HVAC odor."

7      54.    On or around September 12, 2013, Toyota issued a service bulletin

8  specific to 2006 – 2014 Lexus brand vehicles, including the 2013 and 2014

9  Lexus ES350, regarding "HVAC Odor Maintenance." L-SB-0060-13 explained

10 that "[o]dors coming from the outside air and interior can accumulate on the

11 evaporator. As the evaporator core changes temperature, some of these odors

12 may be released resulting in an unpleasant smell from the HVAC vents." Toyota

13 informed its Lexus dealers that odor from the vents was normal "due to the

14 moist/humid air that is trapped in the HVAC system." A virtually identical TSB

15 was released simultaneously for Toyota models including the 2004-20014 Camry

16 and Avalon. The bulletin recommends use of the same High Performance

17 Charcoal Filter for all subject vehicles and warns technicians that "[i]f the

18 condition is constant or is caused by outside influences (such as debris) this

19 bulletin may not be effective in reducing the odors experienced."

20     55.    In addition to the HVAC odor-related TSBs, Toyota demonstrated

21 its knowledge of at least the potential for a design-related cure when it issued a

22 safety recall for certain 2011-2013 Toyota Camry and Avalon models on or

23 around February 26, 2014. The recall addressed the propensity of the HVAC

24 drain to clog, explaining that "[c]ondensed water can accumulate at the bottom

25 of the HVAC unit housing in the subject vehicles."

26     56.    The alleged HVAC Defect was inherent and present in each Class

27 Vehicle at the time of sale.

28     57.    The existence of the HVAC Defect is a material fact that a

1  reasonable consumer would consider when deciding whether to purchase or lease

2  a vehicle.  Had they known that the Class Vehicles were equipped with defective

3  HVAC systems, Plaintiff and Class Members would have paid less for them or

4  would not have purchased or leased them at all.

5      58.    Reasonable consumers, like Plaintiff, expect that a vehicle's HVAC

6  system is free from defects and will function safely.  Plaintiff and Class

7  Members also reasonably expect that Toyota will not sell or lease vehicles with

8  known safety defects, such as the HVAC Defect, and will disclose any such

9  defects to its consumers when it learns of them.  Plaintiff and Class Members did

10  not expect Toyota omit information about the HVAC Defect and to continually

11  deny it.

12              **Toyota Has Actively Concealed the HVAC Defect**

13      59.    Despite being fully aware of the HVAC Defect in the Class

14  Vehicles, Toyota actively concealed its existence and nature from Plaintiff and

15  Class Members at the time of purchase, lease or repair and thereafter.

16  Specifically, Toyota failed to disclose or actively concealed at and after the time

17  of purchase, lease, or repair:

18          (a)    all known material defects or nonconformity in the Class

19                 Vehicles, including the HVAC Defect;

20          (b)    that the Class Vehicles, including their HVAC systems, were

21                 not in good in working order, were defective, and were not fit

22                 for their intended purposes; and

23          (c)    that the Class Vehicles and their HVAC systems were

24                 defective, despite knowing of such defects through customer

25                 complaints and other internal sources, as early as 1997.

26      60.    Toyota was inundated with complaints regarding the HVAC Defect.

27      61.    Toyota issued multiple TSBs, *infra*, for the identical or substantially

28  similar HVAC system to its dealers in the United States, acknowledging defects

and attempting to address them.

62. Despite notice of the HVAC Defect from consumer complaints and dealership repairs, Toyota has not recalled the Class Vehicles to repair the HVAC Defect, has not offered their customers a suitable repair or replacement free of charge, and has not offered to reimburse the Class Vehicles' owners and leaseholders in full for the costs they incurred pertaining to the HVAC Defect.

63. On information and belief, the TSBs and recall outlined above have failed to resolve or cure the HVAC Defect.

64. On information and belief, when they present their Class Vehicles to an authorized Toyota dealer for repair of the HVAC Defect, consumers are frequently required to pay for any measures taken to remediate HVAC odor. In addition, where repairs are attempted, the same new defective part or parts are used to replace the old defective part or parts.

65. Toyota still has not notified Plaintiff and Class Members that the Class Vehicles suffer from a systemic defect that causes the HVAC system to promote the growth of fungi and bacteria and to emit noxious odors.

66. On information and belief, Toyota has caused Plaintiff and Class Members to spend money at its dealerships to diagnose, repair, or replace the Class Vehicles' HVAC systems or its components, despite Toyota's knowledge of the inherent HVAC Defect.

**HVAC Odor Countermeasures Are Ineffective**

67. Defendant has acknowledged that HVAC Odor is a problem and has identified and adopted various remedies and countermeasures to address it. These include the use of a charcoal impregnated filter, cleaning or replacing the evaporator core, and various cleaners and sanitizers. For example, the service bulletin regarding HVAC Odor Maintenance (L-SB-0060-13 and TSB 0142-13) recommends switching from a standard paper filter to a more expensive charcoal filter that must be replaced every year. The "high performance" filters

impregnated with activated charcoal are more porous than standard paper filters and, thus, more absorbent. Their higher absorbency means, however, that they are more quickly saturated and must be replaced more frequently.  In addition, Toyota recommends that "HVAC maintenance" include an annual or biannual evaporator cleaning.

68.    Because it considers HVAC odor to be "maintenance," rather than repair, Toyota does not cover any of its recommended countermeasures under its New Vehicle Limited Warranty or under any other any warranty.  Accordingly, Plaintiff and Class Members have to pay for them out of pocket.  The costs of these countermeasures can range from $50 for do-it-yourself HVAC cleaners to $1,000 for a new evaporator.

69.    The service bulletin, its title designating it as "maintenance" notwithstanding, addresses a known issue and presents technicians with a specific service procedure akin to a repair. Toyota's practice and policy of requiring customers to pay for HVAC odor remediation is unfair and confers an unjust benefit on Defendant.

## TOLLING OF THE STATUTE OF LIMITATIONS

70.    Because the defects in the design or manufacturer of the Class Vehicles and their HVAC system cannot be detected until the defect manifests itself, Plaintiff and Class Members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

71.    Plaintiff and Class Members had no realistic ability to discern that the HVAC system was defective until it malfunctioned and would have no reason to believe that problems they encountered were caused by a widespread, systemic defect.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and Class Members.

72.    Plaintiffs are informed and believe and based thereon allege that

1   Toyota knew of the HVAC Defect since 1997, if not earlier, and has concealed

2   from or failed to alert owners and lessees of the Class Vehicles of the defective

3   nature of their HVAC system.

4       73.    Any applicable statute of limitation has therefore been tolled by

5   Toyota's knowledge, active concealment, and denial of the facts alleged herein.

6   Toyota is further estopped from relying on any statute of limitation because of its

7   concealment of the defective nature of the Class Vehicles and their HVAC

8   system.

9                          **CLASS ACTION ALLEGATIONS**

10      74.    Plaintiff brings this lawsuit as a class action on behalf of himself

11  and all others similarly situated as members of the proposed Classes pursuant to

12  Federal Rules of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3).  This action

13  satisfies the numerosity, commonality, typicality, adequacy, predominance, and

14  superiority requirements of those provisions.

15      75.    The Class and Sub-Class are defined as:

16          **Class**:  All individuals residing in the United States who
            purchased or leased any 2013-2017 Lexus ES series
17          vehicle.

18          **CLRA Sub-Class**:  All members of the Class who are
            "consumers" within the meaning of California Civil
19          Code § 1761(d).

20          **Implied Warranty Sub-Class**:  All members of the
21          Class who purchased or leased their vehicles in the State
            of California.

22      76.    Excluded from the Class and Sub-Classes are: (1) Defendant, any

23  entity or division in which Defendant has a controlling interest, and their legal

24  representatives, officers, directors, assigns, and successors; (2) the Judge to

25  whom this case is assigned and the Judge's staff; (3) any Judge sitting in the

26  presiding state and/or federal court system who may hear an appeal of any

27  judgment entered; and (4) those persons who have suffered personal injuries as a

28

result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Classes should be expanded or otherwise modified.

77. There is a well-defined community of interest in the litigation and each subclass is readily ascertainable.

78. <u>Numerosity</u>: Although the exact number of prospective class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of prospective class members' claims in a single action will provide substantial benefits to all parties and to the Court. The prospective Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the departments of motor vehicles of the various states.

79. <u>Typicality</u>: The representative Plaintiff's claims are typical of all prospective Class Members in that he and they purchased and/or leased a Class Vehicle designed, manufactured, and distributed by Toyota. The representative Plaintiff, like all prospective Class Members, has been damaged by Defendant's misconduct in that he has incurred or will incur the cost of repairing or replacing the defective HVAC system. Furthermore, the factual bases of Toyota's misconduct are common to all prospective Class Members and represent a common thread resulting in injury to the Class.

80. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and the prospective Class Members that predominate over any individual question. These common legal and factual issues include the following:

        (a)    Whether Class Vehicles contain defects relating to the HVAC system;

        (b)    Whether the defects relating to the HVAC system constitute

1      an unreasonable safety risk;

2      (c)   Whether Defendant knew about the defects relating to the

3            HVAC system and, if so, how long Defendant has known of

4            the defect;

5      (d)   Whether the defective nature of the HVAC system constitutes

6            a material fact;

7      (e)   Whether Defendant has a duty to disclose the defective nature

8            of the HVAC system to Plaintiff and prospective Class

9            Members;

10     (f)   Whether Plaintiff and the prospective Class Members are

11           entitled to equitable relief, including a preliminary and/or

12           permanent injunction;

13     (g)   Whether Defendant knew or reasonably should have known of

14           the defects relating to the HVAC system before it sold and

15           leased Class Vehicles to prospective Class Members;

16     (h)   Whether Defendant should be declared financially responsible

17           for notifying all prospective Class Members of the problems

18           with the Class Vehicles and for the costs and expenses of

19           diagnosing, repairing, and/or replacing the defective HVAC

20           system;

21     (i)   Whether Defendant is obligated to inform prospective Class

22           Members of their right to seek reimbursement for having paid

23           to diagnose, repair, or replace the defective HVAC system;

24           and

25     (j)   Whether Defendant breached the implied warranty of

26           merchantability pursuant to the Song-Beverly Act.

27     81.   <u>Adequate Representation</u>:  Plaintiff will fairly and adequately

28     protect prospective Class Members' interests.  Plaintiff has retained attorneys

1  experienced in prosecuting class actions, including consumer and product defect

2  class actions, and Plaintiff intends to prosecute this action vigorously.

3       82.   Predominance and Superiority: Plaintiff and the Class have suffered

4  and will continue to suffer harm and damages as a result of Defendant's unlawful

5  and wrongful conduct.  A class action is superior to other available methods for

6  the fair and efficient adjudication of the controversy.  Absent a class action, most

7  Class Members would likely find the cost of litigating their claims prohibitively

8  high and would therefore have no effective remedy at law.  Because of the

9  relatively small size of each Class Members' claims, it is likely that only a few

10  Class Members could afford to seek legal redress on an individual basis for

11  Defendant's misconduct.  Absent a class action, Class Members will continue to

12  incur damages, and Defendant's misconduct will continue without remedy.

13  Class treatment of common questions of law and fact is also a superior method to

14  multiple individual actions or piecemeal litigation in that class treatment will

15  conserve the resources of the courts and the litigants and will promote

16  consistency and efficiency of adjudication.

17       83.   In the alternative, the Class may be certified because

18            (a)   the prosecution of separate actions by the individual members

19                 of the Class would create a risk of inconsistent or varying

20                 adjudication with respect to individual Class Members, which

21                 would establish incompatible standards of conduct for

22                 Toyota;

23            (b)   the prosecution of separate actions by individual Class

24                 Members would create a risk of adjudications with respect to

25                 them that would, as a practical matter, be dispositive of the

26                 interests of other Class Members not parties to the

27                 adjudications or would substantially impair or impede their

28                 ability to protect their interests; and

(c)    Toyota has acted or refused to act on grounds generally

applicable to the Class, thereby making appropriate final and

injunctive relief with respect to the Class as a whole.

### FIRST CAUSE OF ACTION

### (Violation of California's Consumer Legal Remedies Act,

### California Civil Code § 1750, *et seq.*)

84.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

85.    Plaintiff brings this cause of action on behalf of himself and the members of the CLRA Sub-Class.

86.    Defendant is a "person(s)" as defined by California Civil Code § 1761(c).

87.    Plaintiff and CLRA Sub-Class Members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Class Vehicles primarily for personal, family, or household use.

88.    By failing to disclose and concealing the defective nature of the HVAC system from Plaintiff and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their HVAC systems had characteristics and benefits that they do not have, and represented that the Class Vehicles and their HVAC systems were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

89.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a safety risk on the public.

90.    Defendant knew that the Class Vehicles and their HVAC systems suffered from an inherent defect, were defectively designed or manufactured, and

1  were not suitable for their intended use.

2      91.    As a result of their reliance on Defendant's omissions, owners

3  and/or lessees of the Class Vehicles suffered an ascertainable loss of money,

4  property, and/or value of their Class Vehicles. Additionally, because of the

5  HVAC Defect, Plaintiff and Class Members were harmed and suffered actual

6  damages in that repair or replacement of the Class Vehicles' HVAC system and

7  its components is substantially certain to fail to cure the HVAC Defect and, thus,

8  the HVAC system will require perpetual repair or replacement.

9      92.    Defendant was under a duty to Plaintiff and Class Members to

10  disclose the defective nature of the HVAC system and/or the associated repair

11  costs because:

12          (a)   Defendant was in a superior position to know the true state of

13              facts about the safety defect in the Class Vehicles' HVAC

14              systems;

15          (b)   Plaintiff and Class Members could not reasonably have been

16              expected to learn or discover that their HVAC systems had a

17              noxious and unfixable safety defect until it manifested; and

18          (c)   Plaintiff and Class Members could not reasonably have been

19              expected to learn of or discover the safety defect.

20      93.    By failing to disclose the defective nature of the HVAC system,

21  Defendant knowingly and intentionally concealed material facts and breached

22  their duty not to do so.

23      94.    The facts Defendant concealed from or failed to disclose to Plaintiff

24  and Class Members are material in that a reasonable consumer would have

25  considered them to be important in deciding whether to purchase or lease the

26  Class Vehicles or pay less. Had Plaintiff and Class Members known that the

27  Class Vehicles' HVAC systems were defective, they would have paid less for the

28  Class Vehicles or would not have purchased or leased them.

95.     Plaintiff and Class Members are reasonable consumers who do not expect the HVAC system installed in their vehicles to exhibit problems like noxious odors, contamination, and mold growth.  The absence of such issues is a reasonable and objective consumer expectation relating to vehicle HVAC systems.

96.     As a result of Defendant's conduct, Plaintiff and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and may continue to experience problems the HVAC Defect, including noxious odors, that can't be permanently cured.

97.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages.

98.     Plaintiff and the Class are entitled to equitable relief.

99.     Plaintiff provided Defendant with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a). If, within 30 days, Defendant fails to provide appropriate relief for their violations of the CLRA, Plaintiff will seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief he seeks now.

## SECOND CAUSE OF ACTION

**(Violation of California Business & Professions Code § 17200, *et seq.*)**

100.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

101.   Plaintiff brings this cause of action on behalf of himself and the Class.

102.   As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, Plaintiff and Class Members were harmed and suffered actual damages as a result of the HVAC

Defect in that repair or replacement of the Class Vehicles' HVAC system and/or its components is substantially certain to fail to the defect and, thus, the HVAC system will require perpetual repair or replacement.

103. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

104. Plaintiff and Class Members are reasonable consumers who do not expect their HVAC systems to emit noxious odors, trap debris, or encourage mold growth.

105. Defendant knew the Class Vehicles and their HVAC systems suffered from inherent defects, were defectively designed or manufactured, and were not suitable for their intended use.

106. In failing to disclose the defects with the HVAC system, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

107. Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles and their HVAC system:

(a)     Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' HVAC systems;

(b)     Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of their HVAC system; and

(c)     Defendant actively concealed the defective nature of the Class Vehicles and their HVAC system from Plaintiff and the Class.

108. The facts Defendant concealed from or did not disclose to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease a Class

1   Vehicle.  Had they known that the Class Vehicles' HVAC systems were
2   defective and posed a safety hazard, Plaintiff and Class Members would have
3   paid less for Class Vehicles equipped with the HVAC system or would not have
4   purchased or leased.

5        109.   Defendant continued to conceal the defective nature of the Class
6   Vehicles and their HVAC system even after Class Members began to report
7   problems.  Indeed, Defendant continues to cover up and conceal the true nature
8   of the problem.

9        110.   Defendant's conduct was and is likely to deceive consumers.

10        111.   Defendant's acts, conduct, and practices were unlawful, in that they
11   constituted:

12             (a)   Violations of the California Consumer Legal Remedies Act;
13                 and

14             (b)   Violations of the Song-Beverly Consumer Warranty Act.

15             (c)   Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §
16                 2301 et seq.).

17        112.   By their conduct, Defendant has engaged in unfair competition and
18   unlawful, unfair, and fraudulent business practices.

19        113.   Defendant's unfair or deceptive acts or practices occurred
20   repeatedly in Defendant's trade or business, and were capable of deceiving a
21   substantial portion of the purchasing public.

22        114.   As a direct and proximate result of Defendant's unfair and deceptive
23   practices, Plaintiff and the Class have suffered and will continue to suffer actual
24   damages.

25        115.   Defendant has been unjustly enriched and should be required to
26   make restitution to Plaintiff and Class Members pursuant to §§ 17203 and 17204
27   of the Business & Professions Code.

28   //

**THIRD CAUSE OF ACTION**

**(Breach of Implied Warranty Pursuant to Song-Beverly**

**Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

116.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

117.   Plaintiff brings this cause of action against Defendant on behalf of himself and the Implied Warranty Sub-Class.

118.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

119.   Defendant provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their HVAC system suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

120.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their HVAC system, manufactured, supplied, distributed, and/or sold by Toyota, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their HVAC system would be fit for their intended use.

121.   Contrary to the applicable implied warranties, the Class Vehicles and their HVAC system at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are

1    defective, including the defective design and manufacture of their HVAC

2    system.

3         122.   As a result of Defendant' breach of the applicable implied

4    warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

5    loss of money, property, and/or value of their Class Vehicles.  Additionally,

6    Plaintiff and Class Members were harmed and suffered actual damages as a

7    result of the HVAC Defect, in that repair or replacement of the Class Vehicles'

8    HVAC system and/or its components is substantially certain to fail to cure the

9    HVAC Defect and, thus, the HVAC system will require perpetual repair or

10   replacement.

11        123.   Defendant's actions, as complained of herein, breached the implied

12   warranty that the Class Vehicles were of merchantable quality and fit for such

13   use in violation of California Civil Code §§ 1792 and 1791.1.

14                       **FOURTH CAUSE OF ACTION**

15   **(Breach of Implied Warranty Pursuant to the Magnuson-Moss Warranty**

16                      **Act, 15 U.S.C. § 2301 et seq.)**

17        124.   Plaintiff incorporates by reference the allegations contained in the

18   preceding paragraphs of this Complaint.

19        125.   Plaintiff brings this cause of action on behalf of himself and the

20   Class.

21        126.   The Class Vehicles are a "consumer product" within the meaning of

22   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

23        127.   Plaintiff and Class Members are "consumers" within the meaning of

24   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

25        128.   Defendant is a "supplier" and "warrantor" within the meaning of the

26   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).  Defendant impliedly

27   warranted that the Class Vehicles were of merchantable quality and fit for use.

28   This implied warranty included, among other things: (i) a warranty that the Class

Vehicles and their HVAC system, manufactured, supplied, distributed, and/or sold by Toyota, would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their HVAC system would be fit for their intended use.

129.   Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design and manufacture of their HVAC system.

130.   Defendant's breach of implied warranty has deprived Plaintiff and Class Members of the benefit of their bargain.

131.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

132.   The alleged HVAC Defect was inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

133.   Upon information and belief, Defendant has been afforded a reasonable opportunity to cure its breaches, including when owners and lessees of the Class Vehicles brought their vehicles in for diagnoses and repair of the Class Vehicles.

134.   As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

135.   As a result of Defendant's violations of the Magnuson-Moss

Warranty Act as alleged herein, Plaintiff and Class Members have incurred damages.

### RELIEF REQUESTED

136.   Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against Defendant, as follows:

(a)   An order certifying the proposed Class and Sub-Classes, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

(b)   A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the HVAC system, including the need for periodic repair;

(c)   An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, and to remove and replace Plaintiff and Class Members' HVAC systems with a suitable alternative product; enjoining Defendant from selling the Class Vehicles with the misleading information; compelling Defendant to provide Class Members with a replacement HVAC system that does not contain the defects alleged herein; and/or compelling Defendant to reform their manufacturer's warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such manufacturer's warranty has been reformed;

(d)   A declaration requiring Defendant to comply with the various provisions of the Song-Beverly Act alleged herein and to make all the required disclosures;

(e)   Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

CLASS ACTION COMPLAINT

1         (f)    A declaration that Defendant must disgorge, for the benefit of

2               the Class, all or part of the ill-gotten profits they received

3               from the sale or lease of their Class Vehicles, or make full

4               restitution to Plaintiff and Class Members;

5         (g)    An award of attorneys' fees and costs, as allowed by law;

6         (h)    An award of attorneys' fees and costs pursuant to California

7               Code of Civil Procedure § 1021.5;

8         (i)     An award of pre-judgment and post-judgment interest, as

9               provided by law;

10        (j)     Leave to amend the Complaint to conform to the evidence

11              produced at trial; and

12        (k)    Such other relief as may be appropriate under the

13              circumstances.

14                    **DEMAND FOR JURY TRIAL**

15     137.   Plaintiff demands a trial by jury of any and all issues in this action

16 so triable.

17

18 Dated: September 25, 2017          Respectfully submitted,

19                            Capstone Law APC

20

21                      By:  /s/ Jordan L. Lurie

22                         Jordan L. Lurie
                             Tarek H. Zohdy

23                         Cody R. Padgett
                             Karen L. Wallace

24                         Attorneys for Plaintiff

25

26

27

28

# EXHIBIT 1

1    Jordan L. Lurie (SBN 130013)
     Jordan.Lurie@capstonelawyers.com
2    Tarek H. Zohdy (SBN 247775)
     Tarek.Zohdy@capstonelawyers.com
3    Cody R. Padgett (SBN 275553)
     Cody.Padgett@capstonelawyers.com
4    Karen L. Wallace (SBN 272309)
     Karen.Wallace@capstonelawyers.com
5    Capstone Law APC
     1875 Century Park East, Suite 1000
6    Los Angeles, California 90067
     Telephone: (310) 556-4811
7    Facsimile: (310) 943-0396

8    Attorneys for Plaintiff

9

10             UNITED STATES DISTRICT COURT

            CENTRAL DISTRICT OF CALIFORNIA

11

| 12 | NORMAN BEIL, individually, and on behalf of a class of similarly situated individuals, | Case No.: |
| 13 | | |
| 14 | Plaintiff, | **DECLARATION OF NORMAN BEIL IN SUPPORT OF VENUE FOR CLASS ACTION COMPLAINT PURSUANT TO CIVIL CODE SECTION 1780(d)** |
| 15 | vs. | |
| 16 | TOYOTA MOTOR SALES, U.S.A., INC., a California corporation, | |
| 17 | | |
| 18 | Defendant. | |

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF NORMAN BEIL

I, Norman Beil, declare under penalty of perjury as follows:

1.     I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true.  I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2.     Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's Cause of Action alleging violation of California's Consumers Legal Remedies Act.

3.     I reside in Los Angeles, California, which is in the County of Los Angeles.  I purchased the vehicle that is the subject of this lawsuit in the County of Los Angeles.  I keep my vehicle in the County of Los Angeles and have my vehicle serviced and repaired in the County of Los Angeles.

4.     I am informed and believe that Defendant TOYOTA MOTOR SALES, USA, INC.. ("Defendant") is a California corporation, organized and existing under the laws of the State of California, and registered to conduct business in California.  On information and belief, Defendant conducts business in Los Angeles County.

5.     Based on the facts set forth herein, this Court is a proper venue for the prosecution of Plaintiff's Cause of Action alleging violation of California's Consumers Legal Remedies Act because vehicles that are the subject of this lawsuit are situated here, and a substantial portion of the events giving rise to my claims occurred here.

6.     I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

DECLARATION ISO VENUE FOR CLASS ACTION COMPLAINT

1   Executed on September___, 2017 in _____Los Angeles_____, California.
                              9/21/2017

2

3                               DocuSigned by:

                                Norman Alan Beil
4                               _____
                                _Norman Beil
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION ISO VENUE FOR CLASS ACTION COMPLAINT